IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Derrick S. Maxey,** | Case No. 1:24-CV-1795 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| **CoreCivic, Inc.,** | MEMORANDUM OPINION & ORDER |
| Defendant | |

Currently pending is the Motion for Judgment on the Pleadings of Defendant CoreCivic, Inc. ("Defendant" or "CoreCivic"), filed on February 25, 2025 ("CoreCivic's Motion"). (Doc. No. 18.) On March 19, 2025, Plaintiff Derrick S. Maxey ("Plaintiff" or "Maxey") filed a Brief in Opposition to CoreCivic's Motion ("Maxey's Opposition"). (Doc. No. 19). On April 1, 2025, CoreCivic filed a Reply Brief in Support of CoreCivic's Motion ("CoreCivic's Reply"). (Doc. No. 21.)

For the following reasons, CoreCivic's Motion (Doc. No. 18) is GRANTED.

**I.     Background**

    **A.     Plaintiff's Allegations**

Maxey alleges that he was an inmate at Lake Erie Correctional Institution, which experienced a prison-wide power-outage on August 26, 2023. (Doc. No. 1-1 at PageID# 7.) On the second day of the power outage, "the emergency backup system all of a sudden failed which eliminated all lighting." (*Id.*) According to Maxey, "inmates began to become anxious and tensions between inmates and staff began to grow rapidly inside of the H-CD housing unit." (*Id.*) Unit Manager Warsing ("Warsing") "began the routine of doing [rounds] when back and forth arguements [sic] started up between Warsing and certain inmates[.]" (*Id.*)

Maxey alleges that "during one of the arguments [sic] Warsing became annoyed [and] then sprayed mace into the air of the dorm causing discomfort and difficulty breathing all throughout the dorm with people complain[ing] of skin burning." (*Id.* at PageID#s 7-8.) According to Maxey, approximately thirty (30) minutes later, Warsing "reciprocat[ed] mutual verbel [sic] exchange with particular inmates," and then "bragged that he would 'spray some more' as a comeback to an i [sic] inmates insult." (*Id.* at PageID# 8.) Inmates "disregarded Warsing[']s threat" and then Maxey heard Warsing yell "'thats it . . . yall then done it now' then exit the ho [sic] housing unit then close the protective outer gate to the entance [sic] then stick the nozzle of the mace can through the opening in the gate then empty out a can of mace across the dorm as retali[ation]." (*Id.*)

The mace "hit[] plaintif[f] dead onon [sic] his body, clothes and belonging." (*Id.*) Maxey alleges that he "suffered a complete loss of vision and developed chemical burns as well as nasal and breathing complications immediately as that happened." (*Id.*) He "alert[ed] staff that he could not breath and ewas [sic] taken outside of the unit to wait for medical treatment which took several hours." (*Id.*) He alleges that since that incident, he has "suffered loss of sight as documented by medical personal services." (*Id.*)

According to Maxey, "CoreCivic did violate its own standards and customs concerni[ng] inmate safety by having senior employees that uses [sic] deliberate indifference for saftey [sic] of its subjects to be violated at their own personal convenience without regard for others." (*Id.*) Maxey "was assaulted by the particular staff member by spraying him with mace[.]" (*Id.*) Thus, Maxey alleges that CoreCivic is "liable forpersonal [sic] injury and failure of duty of carealong [sic] with ordered action to [prevent] in the future. In the form of monetary compensation." (*Id.*)

### B. Procedural History

On September 3, 2024, Maxey filed the Complaint in the Ashtabula County Court of Common Pleas asserting claims for "failure of duty of care," "personal injury," "punitive damages," and "pain and suffering" against CoreCivic. (*Id.* at PageID# 7.) On October 15, 2024, CoreCivic filed a Notice of Removal ("CoreCivic's Notice") in this Court, "invok[ing] this Court's original jurisdiction under 28 U.S.C. §§ 1331 and 1332, as there is both federal question and diversity jurisdiction." (Doc. No. 1 at PageID# 2.) On October 21, 2024, CoreCivic filed its Answer. (Doc. No. 5.) On February 25, 2025, CoreCivic filed its Motion. (Doc. No. 18.) On March 19, 2025, Maxey filed his Opposition. (Doc. No. 19.) On April 1, 2025, CoreCivic filed its Reply. (Doc. No. 21.)

## II. Standard of Review

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative

3

level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level— "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, the examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (internal quotation marks omitted). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper technical, code pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### III. Analysis

In CoreCivic's Motion, CoreCivic makes two core arguments. First, CoreCivic argues that *res judicata* bars Maxey's claims because Judge Brennan entered a final judgment dismissing a

4

previous lawsuit Maxey had filed against CoreCivic based on identical factual bases and containing identical causes of action. (Doc. No. 18 at PageID#s 91-93; Memorandum Opinion and Order, Doc. No. 3, *Maxey v. Ohio Dept. of Rehab. and Correction, et al.*, 23-cv-1796, N.D. Ohio ("*Maxey I*"); Judgment Entry, Doc. No. 5, *Maxey I.*)[1]

Second, CoreCivic argues that Maxey's claims fail as a matter of law. According to CoreCivic, Maxey's own allegations establish that Warsing acted "outside the scope of his job" and that therefore CoreCivic is not liable for Warsing's "unauthorized actions[,]" and that Maxey "failed to allege the existence of an illegal policy or custom of Defendant that injured Plaintiff" because he alleged that "the officer acted in violation of CoreCivic's policy and practice." (*Id.* at PageID# 94.)

In Plaintiff's Opposition, Maxey only opposes CoreCivic's arguments, reproduced (and formatted) as follows:

> Now come the Plaintiff, Presenting The Opposition to Defendents motion for Judgement.
> 1.) Every point contained in the motion that is not specifically admitted, Denied or Denied for Lack of knowledge is Denied.
> 2. Federal Rules of Civil Procedure 8(b)(2) *Smith V. Bush* 2024, U.S. App. Texts 1358: Specific Facts are not necesssary and Plaintiff's statement need only give the Defendent fair notice of what the . . . claim is and ground upon which it rests.
> 3. Points 1(A) Plaintiff Denies
> 4. Point 2. Denied for Lack of knowledge.
> 5. Point 3 Denied
> 6. Point 4 Denied
> 7. Plaintiff opposes Defendents motion for Judgment.

(Doc. No. 19 at PageID# 96) (errors in original).

---

[1] Maxey also named the Ohio Department of Rehabilitation and Corrections ("ODRC") and Corrections Corporation of America as Defendants in the first suit. (*Maxey I*, Doc. No. 3 at PageID# 12.)

In its Reply, CoreCivic reiterates its initial two arguments from its Motion and adds that Maxey waived his opposition to the arguments therein by filing his Opposition styled as an answer in response to CoreCivic's Motion. (Doc. No. 21 at PageID#s 104-06.)

For the reasons below, the Court agrees with CoreCivic that Maxey's claims fail as a matter of law and therefore the Court declines to address the CoreCivic's argument regarding *res judicata*.

As CoreCivic notes, the court in *Maxey I* held that Maxey's claims failed against CoreCivic because Maxey pled that Warsing was acting "outside of his scope of job duty" when he allegedly sprayed Maxey with mace. (*Maxey I*, Doc. No. 1 at PageID# 4; Doc. No. 18 at PageID# 94; Doc. No. 21 at PageID# 106.) The court also held that Maxey had not "sufficiently alleged the existence of an illegal policy or custom of Defendants that injured Plaintiff." (*Maxey I*, Doc. No. 3 at PageID# 6.)

Maxey's Complaint in this case is not the same as his Complaint in *Maxey I*. Here, he omits the specific allegation that Warsing "operated on his own self-interest, outside of his scope of job duty[.]" (*Id.* at PageID# 6.) Additionally, Maxey's Complaint in this action alleges instead that it was CoreCivic, not Warsing, that "did violate its own standards and customs concerning inmate safety by having senior employees that uses [sic] deliberate indifference for safety of its subjects to be violated their own personal convenience without regard for others." (Doc. No. 1-1 at PageID# 8.)

Even with Maxey's new allegations, Maxey cannot state a claim under Ohio law because Warsing was acting outside the scope of his employment, and he cannot state a *Monell* claim because Maxey failed to satisfy any of the four theories of *Monell* liability.

A. **CoreCivic is not vicariously liable for Warsing's conduct under Ohio law.**

"'The *respondeat superior* doctrine makes an employer or principal vicariously liable for the torts of its employees or agents.'" *Williams v. Clerac, LLC*, 635 F. Supp. 3d 607, 613 (N.D. Ohio

6

2022) (quoting *Auer v. Paliath*, 17 N.E.3d 561, 564 (Ohio 2014)). "'[I]n order for an employer to be liable under the doctrine of *respondeat superior*, the tort of the employee must be committed within the scope of employment." *Heights Driving Sch. v. Top Driver*, 51 Fed. Appx. 932, 938 (6th Cir. 2002) (quoting *Byrd v. Faber*, 565 N.E.2d 584 (Ohio 1991)). But "an employee is not acting within the scope of employment if [his] acts are self-serving and in no way facilitate or promote business, or for 'an intentional and willful attack committed by an agent or employee, *to vent his own spleen or malevolence against the injured person*.'" ² *Randall v. NASA*, 14 F.3d 1143, 1147 (6th Cir. 1994) (quoting *Woods v. McGuire*, 954 F.2d 388, 390 (6th Cir. 1992)) (emphasis added); *Liadis v. Sears, Roebuck & Co.*, 47 Fed. Appx. 295, 299 (6th Cir. 2002) (quoting *Vrabel v. Acri*, 103 N.E.2d 564, 568 (Ohio 1952)) (same).

*Jodrey v. Ohio Dep't of Rehab. & Corr.*, 2013 WL 407471 (Ohio App. 10th Dist. Jan. 13, 2013) is illustrative of this principle. There, Jodrey was a paralyzed inmate who used a wheelchair for mobility, and Martin was a correctional officer who accompanied Jodrey for his shower. *See id.* But then,

> Martin became 'mad' when Jodrey had difficulty re-dressing himself after his shower. Martin kept rushing Jodrey to hurry up. When Jodrey and Martin were on their way back to Jodrey's unit, Jodrey discovered that he had forgotten his soap in the shower. Martin, who 'was just mad,' grabbed the handlebars of Jodrey's wheelchair and shoved Jodrey back to the shower room. Once Jodrey and Martin were in the shower room, Martin dumped Jodrey out of his wheelchair and dropped the wheelchair on top of him.

*Id.* at *1 (citations omitted). Applying *Byrd* and *Vrabel*, the court held that Martin had acted outside his scope of employment, reasoning as follows:

> Martin was not defending himself or another, he was not controlling or subduing an inmate who refused to obey prison rules, he was not stopping an inmate from destroying

---

² To "vent one's spleen" is an idiom meaning to "express angry feelings." *Vent one's spleen*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/vent%20one%27s%20spleen (last visited July 24, 2025).

7

> property or engaging in a disturbance, he was not preventing an escape or apprehending an escapee, and he was not controlling or subduing an inmate to stop or prevent self-inflicted harm. If any of these circumstances had existed, the use of force would have furthered ODRC's mission to supervise adult offenders in a safe, humane, and secure environment. By using force against [Jodrey] in the absence of any of these circumstances, Martin actually violated ODRC's mission—he compromised Jodrey's safety and security solely because he was angry and frustrated with Jodrey. Consequently, we conclude that the trial court did not err in concluding that Martin was acting outside the scope of his employment when he upended Jodrey's wheelchair.

*Id.* at *5. The court further based its conclusion on its observation that "Martin's only apparent motive for his actions was to vent his anger. That self-serving motive removes Martin's actions from the scope of his employment." *Id.*

Maxey's case is analogous to *Jodrey*. Here, Maxey specifically alleges that Warsing "became annoyed" "during one of the arguments" with the inmates. (Doc. No. 1-1 at PageID# 7.) According to Maxey, Warsing threatened that he would "spray some more" specifically "as a comeback to an inmate's insult" and it was only after Warsing was insulted that he allegedly yelled "thats it . . yall then done it now[,]" exited the housing unit, and "as a comeback" followed through on his threat to "spray some more" by "empty[ing] out a can of mace across the dorm as retail[iation]." (*Id.* at PageID# 8.) In both cases, the employee's motive was to express his anger at a defenseless inmate or inmates in an outburst of frustration, merely because the employee felt annoyed. Therefore, as in *Jodrey*, Maxey's allegations show that Warsing acted outside the scope of his employment with CoreCivic when he sprayed mace inside of Maxey's housing unit.

Accordingly, CoreCivic is not vicariously liable for Warsing's alleged tortious conduct under Ohio law.

**B.     Maxey's claims fail as *Monell* claims under federal law.**

Even construed as a *Monell* claim under federal law, Maxey cannot state a claim.

8

"CoreCivic, as a private entity performing a traditional state function in operating a prison, also acts under the color of state law and may be liable under § 1983." *Snead v. CoreCivic of Tenn., LLC*, 2020 WL 6469995 at *17 (M.D. Tenn. Apr. 6, 2020) (citing *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). Thus, "[t]he liability of an entity like CoreCivic is analyzed in accordance with *Monell* as if it were a municipal entity." *Id.* (citing *Street*, 102 F.3d at 814).

It is well established that a municipal entity may not be sued for injuries inflicted solely by its employees or agents under § 1983. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978); *see also Baynes v. Cleland*, 799 F.3d 600 (6th Cir. 2015); *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014); *Heyerman v. Cty. of Calhoun*, 680 F.3d 642 (6th Cir. 2012). Rather, a plaintiff may only hold a municipal entity liable under § 1983 for the entity's own wrongdoing. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) ("Section 1983 does not permit a plaintiff to sue a local government entity on the theory of *respondeat superior*.") (citing *Monell*, 436 U.S. at 692-94). Or, as the Sixth Circuit explained, "a municipality is liable under § 1983 only where, 'through its deliberate conduct,' it was 'the 'moving force' behind the injury alleged.'" *D'Ambrosio*, 747 F.3d at 388-389 (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (citation omitted)). Accordingly, construing Maxey's Complaint as including a § 1983 claim against CoreCivic for injuries allegedly sustained as a result of the alleged conduct of its employee, Warsing, such a claim cannot succeed.

To properly allege a municipal liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights

violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013); *see also D'Ambrosio*, 747 F.3d at 386. Moreover, a plaintiff must show a "direct causal link between the custom and the constitutional deprivation; that is, she must show that the particular injury was incurred because of the execution of that policy." *Doe v. Claiborne Cnty. By. & Through Claiborne Cnty. Bd of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996) (internal quotation marks omitted); *see also Baynes*, 799 F.3d at 621; *Fair v. Franklin Cnty.*, 2000 WL 659418 at *3 (6th Cir. May 11, 2000) ("*Monell* requires that a plaintiff identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy."); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (same).

Maxey has not set forth any allegations regarding a final decision-maker ratifying Warsing's actions or any allegations regarding Warsing's inadequate training, so the Court evaluates Maxey's claims under only the first and fourth theories of *Monell* liability.

### 1. First *Monell* Theory of Liability: Illegal Official Policy

To state a claim under the first *Monell* theory of liability for an illegal official policy, "a plaintiff must [1] 'identify the policy, [2] connect the policy to the [entity] itself and [3] show that the particular injury was incurred *because of* the execution of that policy.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 829 (6th Cir. 2019) (emphasis added). "When proceeding under the first theory of *Monell* liability, under which a plaintiff must show an official policy or legislative enactment, the plaintiff must show that there were 'formal rules or understandings—*often but not always committed to writing*—that were intended to, and did, establish fixed plans of actions to be followed under similar circumstances consistently and over time.'" *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)) (alterations omitted) (emphasis in original); *see also id.* at 830 ("[A] city

may be liable under *Monell* for a policy of permitting constitutional violations regardless of whether the policy is written …").

Here, Maxey satisfied the first two elements, but not the third. He has identified the official policy as the "standards and customs concerni[ng] inmate safety[.]" (Doc. No. 1-1 at PageID# 8.) He also connected that policy to CoreCivic, attributing it thereto by describing that policy as CoreCivic's "*own* standards and customs." (*Id.*) (emphasis added). But Maxey has not satisfied the third element. His allegation is that CoreCivic *violated* its own policy (i.e., its "standards and customs") by allowing Warsing to spray Maxey with mace. (*Id.*) Thus, according to Maxey, the incident with Warsing marked a *departure* from CoreCivic's otherwise permissible policy of keeping inmates safe. The third element of *Monell* liability requires the opposite of what Maxey alleged. Instead of pointing to a *legal* policy (keeping inmates safe) and alleging that the defendant's *failure* to implement that legal policy caused the plaintiff's injury (allowing Warsing to spray Maxey with mace), as Maxey has alleged, the plaintiff must point to an *illegal* policy and allege that the defendant's *execution* of the illegal policy caused the plaintiff's injury. *See Jackson*, 925 F.3d at 829.

Put simply, Maxey has not alleged the existence of an illegal policy pursuant to which CoreCivic was acting, so therefore, Maxey has failed to state a claim under the first *Monell* theory of liability.

### 2. Fourth *Monell* Theory of Liability: Custom of Tolerance or Acquiescence

Even if CoreCivic had no official policy, to state a claim under the fourth *Monell* theory of liability for a custom of tolerance or acquiescence, a plaintiff must allege "(1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate

indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's custom was the 'moving force' or direct causal link in the constitutional deprivation." *Wallace v. Coffee Cty.*, 852 Fed. Appx. 871, 876 (6th Cir. 2021).

Here, Maxey has not satisfied any of the elements. He has not established the first element because he has alleged no *other* instances of unnecessary mace sprays or deliberate indifference to inmate safety. To the contrary, Maxey only describes the single incident that occurred on August 26, 2023, and alleges that he "was assaulted by the *particular* staff member [Warsing] by spraying him with mace[.]" (*Id.* at PageID# 8.) One example is not enough to establish the necessary "clear and persistent pattern" of rights violations. *Wallace*, 852 Fed. Appx. at 876. Nor has Maxey satisfied the remaining elements. He has failed to satisfy the second and third because he has not alleged that a final policymaker knew or approved of the (unalleged) custom, and he cannot satisfy the fourth because he is not able to trace a constitutional rights violation to an unalleged custom. *See Kuhlman v. City of Cleveland*, 2025 WL 2029791 at *40 (N.D. Ohio July 21, 2025) ("Having failed to show such a 'pattern' under the first element, [the plaintiff] then necessarily fails under the fourth because a non-existent pattern cannot be the 'moving force' for a constitutional right violation."). Therefore, Maxey has failed to state a claim under the fourth *Monell* theory of liability.

Accordingly, even if CoreCivic violated Maxey's constitutional rights, the Court concludes that Maxey has failed to state a *Monell* claim.[3]

---

[3] As noted above, because the Court concludes that Maxey has failed to state a claim on the merits, the Court need not address CoreCivic's arguments regarding *res judicata* and waiver.

## IV. Conclusion

Accordingly, the for the reasons set forth above, CoreCivic's Motion (Doc. No. 18) is GRANTED.

**IT IS SO ORDERED.**

Dated: July 25, 2025                                          *s/ Pamela A. Barker*
                                                              PAMELA A. BARKER
                                                              UNITED STATES DISTRICT JUDGE